IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TOWANDA RICHARDSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. RDB-18-0884 |
| v. | * | |
| MARYLAND TRANSIT ADMINISTRATION, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On July 5, 2017 Plaintiff Towanda Richardson ("Plaintiff" or "Richardson") commenced this lawsuit in the Circuit Court for Baltimore City against Defendants the Maryland Transit Administration ("MTA"), the State of Maryland, Lt. Timothy Perry ("Perry"), Patricia Johnson ("Johnson"), and Tonya Sturdivant ("Sturdivant") (collectively, the "MTA Defendants"); Dr. Robert Toney and Occupational Health Centers of Southwest, PA, d/b/a Concentra Urgent Care (the "Concentra Defendants"); and Dr. Douglas Craig, Atlantic OccuPsych, and Greenside Psychological Associates, Inc. (the "Greenside Defendants"). On March 27, 2018, Defendants MTA, the State of Maryland, and Perry removed this action to this Court, pursuant to 28 U.S.C. § 1331. (ECF No. 1.)

Richardson, a police officer employed by the MTA, alleges that the MTA Defendants retaliated against her for filing an EEOC Complaint by demoting her and placing her on administrative leave on the pretense that she was unfit for duty. (ECF No. 2, at ¶ 13.) Her Second Amended Complaint presents several state law claims: Defamation (Counts I-III);

Breach of Contract (Count IV); and violations of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, Human Relations § 20-601, *et seq.* (Count VII). Richardson also alleges violations of two federal statutes: Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count V) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.* as amended by the Americans with Disability Acts Amendments Act of 2008 ("ADAAA") (Count VI).

Now pending before this Court is Plaintiff's Motion to Stay Proceedings Pending Completing of the EEOC Investigation and Conciliation, and Request for Hearing (ECF No. 21); the Greenside Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 8); and the MTA Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 13).[1] The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Plaintiff's Motion to Stay Proceedings Pending Completion of the EEOC Investigation and Conciliation, and Request for Hearing (ECF No. 21) is DENIED and the MTA Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART. This Court dismisses Plaintiff's federal claims set forth in Counts V and VI and declines to exercise supplemental jurisdiction over her remaining state claims. Therefore, Plaintiff's state law claims are REMANDED to the Circuit Court for Baltimore City. Accordingly, this Court will not rule on the Greenside Defendant's pending Motion to Dismiss, as it concerns only state law claims. (ECF No. 8.)

## BACKGROUND

---

[1] On April 3, 2018, Defendants MTA, the State of Maryland, and Perry filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 13.) On May 31, 2018 Defendants Johnson and Sturdivant joined the Motion. (ECF No. 29.)

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. V. Nat' Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Richardson has worked as an MTA Police Officer for about seven years. (ECF No. 2, at ¶ 10.) She alleges that Defendants began to retaliate against her after she filed a Charge with the Equal Employment Opportunity Commission ("EEOC") in May 2016. Richardson does not explain why she filed this Charge, describe its contents, or furnish a copy for this Court's review. She only explains that she "decided not to pursue" it. (*Id.* at ¶ 13.)

Richardson claims that Defendants initiated a "campaign of abuse and harassment" immediately after she filed her Charge. (*Id.* at ¶ 64.) The Complaint summarily alleges that the Defendants have issued her meritless write-ups, subjected her to "hyper supervision and hyper scrutinizing," and made "false allegations regarding performance."[2] (*Id.* at ¶ 81.) Richardson supplies some specifics to flesh-out these vague claims. On July 1, 2016 Patricia Johnson, Chief of Medical Services, allegedly demoted Richardson and placed her on light duty. (*Id.* at ¶ 15.) Richardson further alleges that Timothy Perry, a Lieutenant at the MTA Police Department, and Tonya Sturdivant, the Deputy Director of Medical Services, placed her on administrative leave. (*Id.* at ¶ 16.) The MTA allegedly cited Richardson's "mental health issues" as the reason for taking these actions against her. (*Id.* at ¶¶ 16-17.)

Richardson alleges that the MTA ordered her to undergo two mental health evaluations

---

[2] Richardson additionally alleges that Defendants charged her for a lost phone but did not attempt to bill her male colleagues for the same mistake. (*Id.* at ¶ 81.) This allegation appears misplaced, as her claims of disparate treatment are not based on sex.

designed to support its claims that she was unfit for duty due to her mental state.[3] (*Id.* at ¶¶ 20-23.) On July 21, 2016 she submitted to a "Workability Examination" at Concentra conducted by Dr. Robert Toney, the Medical Director for the State of Maryland. (*Id.* at ¶ 20.) Dr. Toney concluded that Richardson should remain suspended from employment and recommended that she undergo a psychological examination. (*Id.* at ¶ 21.) Richardson claims that Dr. Toney "and/or" the MTA referred her to Dr. Douglas Craig of Atlantic OccuPsych, who allegedly "rubber-stamped" Dr. Toney's conclusion. (*Id.* at ¶¶ 23-24.) Dr. Craig determined that Richardson's "current functioning suggests compromise of essential job elements of a Police Office[r], specifically related to integrity, stress tolerance, social competence, and impulse control." (*Id.* at ¶ 23.) Accordingly, he recommended that Richardson's employment should have been terminated. (*Id.*) Richardson disputes the accuracy of these evaluations, citing favorable examinations performed by other medical professionals. (*Id.* at ¶¶ 26-29.)

On July 26, 2016 Richardson filed a second Charge of Discrimination with the EEOC, which she describes as "a discrimination claim based on Disability and Retaliation." (*Id.* at ¶ 19.) Richardson provides no additional details beyond these and has not supplied a copy of her Charge. On August 8, 2016, the MTA allegedly charged Richardson with insubordination. (*Id.* at ¶ 63.) At an unspecified time that month,[4] Lt. Timothy Perry allegedly snatched Officer Richardson's phone out of her hand, ordered her to leave, and declared that she "he was not

---

[3] The Second Amended Complaint does not explain whether these evaluations occurred before or after she was placed on administrative leave. In her Response to the MTA Defendant's Motion to Dismiss, Richardson claims that the MTA placed her on administrative leave after the examinations by Dr. Toney and Dr. Craig. (ECF No. 20-1, at 2.)

[4] The Second Amended Complaint does not specify the precise date of this encounter or describe where it occurred.

an officer." (*Id.* at ¶ 30.)  Subsequently, Lt. Perry and another employee escorted her from the premises.

On July 5, 2017, Richardson commenced this action in the Circuit Court for Baltimore City, alleging three counts of defamation and one count of breach of contract.  (Notice of Removal at ¶ 1, ECF No. 1.)  On January 18, 2018 she filed a First Amended Complaint which added no new claims. (*Id.*)  On March 5, 2018, the Greenside Defendants moved to dismiss the Amended Complaint.  (ECF No. 8-1, at 1.)  On March 12, 2018, Richardson again amended her Complaint to add a state law claim under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-601, *et seq.*, and two federal claims pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (Id; ECF No. 2.)  Richardson claims that the MTA Defendants failed to accommodate her disability, subjected her to disparate treatment, retaliated against her for filing an EEOC Charge in May 2016, and created a hostile work environment—all in violation of the Rehabilitation Act.  Under the ADA, Richardson only brings disparate treatment, retaliation, and hostile work environment claims.

On March 27, 2018, prompted by the addition of federal claims, Defendants MTA, the State of Maryland, and Perry removed this action to this Court, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  On April 2, 2018 the Greenside Defendants once again moved to dismiss the Complaint.  (ECF No. 8.)  The MTA Defendants filed their pending Motion to Dismiss the following day.  (ECF No. 13.)  On May 1, 2018, Plaintiff filed a Motion to Stay, which the MTA Defendants have opposed.  (ECF Nos. 21, 24.)

## STANDARD OF REVIEW

### I.     Motion to Stay

The United States Supreme Court has long held that the "power to stay proceedings is incidental to the power inherent in every court" to control its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 245–55, 57 S. Ct. 163 (1936); *see also Williford v. Armstrong World Indus. Inc.,* 715 F.2d 124, 127 (4th Cir. 1983) (holding that courts possess the inherent power to stay an action to ensure the "efficient management of their dockets"). When determining whether to grant a motion to stay, a district court must "weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 255. In determining whether to stay proceedings, the district court should consider three factors: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed. *See, e.g., Yearwood v. Johnson & Johnson, Inc.,* No. RDB–12–1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012).

### II.    Motion to Dismiss Pursuant to Rule 12(b)(1)

The MTA Defendants argue Plaintiff has failed to exhaust her administrative remedies with respect to her Americans with Disabilities Act and Maryland Fair Employment Practices Act claims. A motion to dismiss for failure to exhaust administrative remedies is governed by Federal Rule of Civil Procedure 12(b)(1), which requires dismissal when the court lacks subject matter jurisdiction. *Khoury v. Meserve,* 268 F. Supp. 2d 600, 606 (D. Md. 2003); *Clarke v. DynCorp Intern. LLC,* 962 F. Supp. 2d 781, 786 (D. Md. 2013). Under Rule 12(b)(1), the plaintiff bears

the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

### III.   Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those

facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## ANALYSIS

### I.      Plaintiff's Motion to Stay is Denied.

Richardson seeks to stay this action, which has been pending before the EEOC for nearly three years, to allow the agency additional time to investigate her ADA and MFEPA claims. She explains that she was forced to commence this lawsuit while her claims before the EEOC were still pending because her defamation and breach of contract claims have short statutes of limitations which are not tolled by filing a Charge with the EEOC. (ECF No. 21, at ¶ 6.) Now, having amended her Complaint to introduce claims pending before the EEOC, she fears that this case will advance before the agency finishes its investigation and conciliation efforts. (*Id.* at ¶¶ 6, 10.) Accordingly, she seeks a stay of the proceedings in this case, hopeful that the EEOC's investigation and conciliation efforts will bring about a settlement.

The MTA Defendants oppose the stay. They argue that this Court lacks subject matter jurisdiction over Plaintiff's ADA and MFEPA claims because she has not requested a right-to-sue letter from the EEOC, even though she may do so at any time. (ECF No. 24, at 3.)

They contend that Richardson has manufactured her predicament, as nothing required her to amend her Complaint to bring the ADA and MFEPA claims at this juncture. (*Id.*) They argue that this Court should not stay the case to allow the EEOC to investigate claims which this Court has no power to adjudicate and Plaintiff did not need to bring.

This Court DENIES the Motion to Stay to allow this case to proceed unhindered by the EEOC's investigation of Richardson's unripe claims. As further explained below, this Court has once before denied Motion to Stay in *Gardner v. Maryland Mass Transit Admin.*, JKB-18-0365, 2018 WL 2193692 (D. Md. May 14, 2018), a case which presented the exact same procedural posture. Consistent with the holding of *Gardner*, this Court will not stay this case indefinitely as it awaits further proceedings before the EEOC or Richardson's decision to request a right-to-sue letter. Finally, a stay is not warranted in this case even though this Court may assert jurisdiction over all of Richardson's Rehabilitation Act claims, as well as the retaliation claims she has asserted pursuant to the ADA and MFEPA. As discussed below, Richardson has failed to adequately plead any claims under the Rehabilitation Act or a retaliation claim under the ADA. Furthermore, this Court declines to exercise supplemental jurisdiction over Richardson's state law claims, including those brought pursuant to MFEPA.

Both the ADA and MFEPA require plaintiffs to exhaust administrative remedies before filing suit in court. *Marshall v. Anne Arundel County*, ELH-18-74, 2019 WL 568676, at *10 (D. Md. Feb. 12, 2019). Claims brought pursuant to these statutes are subject to the same exhaustion procedures of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified as amended at 42 U.S.C. §§ 2000e, *et seq. Id.* Pursuant to these regulations, a plaintiff must first submit a "charge" of discrimination with the EEOC or an appropriate state or local agency

within a specified time "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), and "cannot bring suit until [s]he has exhausted the administrative process." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). In Maryland, a "deferral" jurisdiction, the EEOC must refer the charge to the Maryland Commission on Civil Rights ("MCCR") and afford the agency at least sixty days to act under State or local law to remedy the alleged discrimination. 42 U.S.C. § 2000e-5(d). Thereafter, the EEOC must assume its own investigation of the charge to determine whether there is reasonable cause to believe that unlawful discrimination has occurred. *See* 42 U.S.C. § 2000e-5(b).

After making its determination, the EEOC must either dismiss the charge, reach a conciliation agreement, or institute a civil action. 42 U.S.C. § 2000e-5(b). If the EEOC has not taken these actions after 180 days (or, in a deferral jurisdiction, 240 days) have elapsed since the filing of the charge, the plaintiff may submit a written request that the EEOC issue a notice of right to sue, commonly called a "right-to-sue letter." 29 C.F.R. § 1601.28(a)(1). In response, the EEOC must "promptly issue" the letter. 29 C.F.R. § 1601.28(a)(1); *see also Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 712-14 (D. Md. 2013) (detailing these procedures).

The United States Court of Appeals for the Fourth Circuit has long held that the "receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995); *see also Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) ("[I]t is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000(e)-5(f)(1)."). A plaintiff

who has not received a right-to-sue letter may nevertheless pursue her claim by demonstrating that the EEOC improperly withheld a right-to-sue letter or never began the conciliation process. *See Perdue*, 690 F.2d at 1092-93 (finding that plaintiff had established jurisdiction by demonstrating that the EEOC had refused to issue a right-to-sue letter despite the plaintiff's proper requests); *Soble v. Univ. of Maryland*, 572 F. Supp. 1509, 1517 (D. Md. 1983) (explaining that the plaintiff may pursue claims in court if, after the conciliation period has elapsed, the EEOC has not considered the plaintiff's claims).

As this Court recently explained, a plaintiff does not establish her "entitlement" to a right-to-sue letter by merely waiting out the 180-day statutory period. While the EEOC investigation is on-going, she must at least request a right-to-sue letter before proceeding to federal court. *See Gardner*, 2018 WL 2193692, at *4. *Gardner* presented the exact same procedural posture at issue in this case. In *Gardner*, the plaintiff first pursued state law causes of action in the Circuit Court for Baltimore City. *Id.* at *2. Gardner subsequently amended her complaint to add two state law causes of action and two federal claims, including a claim under Title VII. *Id.* Following the introduction of federal claims, the Defendants removed the case to this Court. *Id.* Gardner then moved to stay these proceedings, explaining that EEOC was still investigating her claims. *Id.* at *6. Because Gardner's EEOC charge had been pending for over 240 days, she had a statutory right to request and obtain a right-to-sue letter. *Id.* at *5. She nevertheless chose not to exercise this right, hopeful that an EEOC investigation would facilitate the settlement of her claims. *Id.* at *6. The Defendant opposed the stay, arguing that this Court lacked jurisdiction over Gardner's federal claims because she had not satisfied the jurisdictional prerequisite of obtaining a right-to-sue letter. It further argued that

this Court should not halt proceedings to await the uncertain time in the future when Gardner requested her right-to-sue letter.

This Court denied the Motion to Stay. It explained that the plaintiff's failure to request a right-to-sue letter deprived the court of jurisdiction and highlighted the important notice function this procedure served. As this Court explained, the right-to-sue letter operates to prevent "concurrent proceedings in the EEOC and the courts." *Id.* at *4. (quoting *Perdue*, 690 F.2d at 1094). The letter both alerts the EEOC that "its time is up" and notifies the court that litigation may commence. *Id.* at *5. By skipping this step and proceeding directly to court, the plaintiff risks a coordination failure between the two systems, potentially causing "a court [to] take[] jurisdiction over a case while EEOC proceedings are ongoing." *Id.* at *5. Accordingly, plaintiffs are only permitted to proceed without a right-to-sue letter under circumstances which do not present these risks, such as when the EEOC fails to issue a right-to-sue letter or has already concluded (or never started) its investigation. *Id.* Because Gardner had not requested a right-to-sue letter and EEOC proceedings were on-going, this Court determined that it could not take jurisdiction over Gardner's Title VII claims. As the only other basis for jurisdiction was a meritless Section 1981 claim, this Court denied the Motion to Stay, unwilling to freeze proceedings until the uncertain time when Gardner's federal claims ripened.

In this case, Richardson has pursued a nearly identical litigation strategy which likewise does not warrant a stay.[5] Just as Gardner chose to assert a Title VII claim prematurely, Richardson has amended her Complaint to add ADA and MFEPA claims which have not

---

[5] Richardson is represented by the same attorney who appeared on behalf of Gardner.

been subject to complete administrative exhaustion. She admits, just as Gardner did, that she has not requested a right-to-sue letter despite her ability to do so at any time. And, just as Gardner requested a stay, so too Richardson seeks to freeze these proceedings to allow the EEOC additional time to investigate her claims and potentially facilitate a settlement. As in *Gardner*, this Court will not stay the case to await the uncertain time when Richardson's ADA and MFEPA claims ripen. To permit Richardson to introduce unripe claims and use their uncertain administrative status to stall this litigation indefinitely would undeniably prejudice Defendants, whose fully-briefed Motions to Dismiss have been pending for nearly a year. Accordingly, Richardson's Motion to Stay (ECF No. 21) is DENIED.

Neither party has addressed the narrow exception to the administrative exhaustion requirements presented by Plaintiff's retaliation claims. Claims of retaliation based on filing a Charge with the EEOC may be asserted for the first time in federal court. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301-02 (4th Cir. 2009); *Mintz v. City of High Point*, 1:11CV586, 2014 WL 897013, at *3 (M.D.N.C. March 6, 2014) (dismissing wrongful termination claim because of plaintiff's failure to submit a right-to-sue letter but finding that it had jurisdiction over plaintiff's retaliation claim pursuant to the rule articulated in *Calvert Group*). Accordingly, this Court may take jurisdiction over Richardson's claims of retaliation based on her May 2016 EEOC Charge. Nevertheless, this Court's jurisdiction over these claims do not warrant a stay in this action. As discussed below, Richardson has failed to state a claim of retaliation under both the ADA and the Rehabilitation Act. Furthermore, this Court declines to exercise supplemental jurisdiction over Richardson's MFEPA claim.

## II. Plaintiff's ADA and Rehabilitation Act Claims are Dismissed.

Richardson alleges violations of the ADA and § 504 of the Rehabilitation Act. As previously discussed, this Court lacks jurisdiction over all of Richardson's ADA claims, save for her retaliation claim, and must dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). Defendants do not seek to dismiss Plaintiff's Rehabilitation Act claims on this basis, as they are not subject to the same administrative exhaustion requirements. *See Whitaker v. Maryland Transit Admin.*, ELH-17-00584, 2018 WL 902169, at *29 n.15 (D. Md. Feb. 14, 2018) (explaining that non-federal employees need not exhaust Rehabilitation Act claims). Instead, Defendants seek dismissal of these claims under Rule 12(b)(6), citing the Second Amended Complaint's numerous pleading deficiencies.

Richardson brings her ADA and Rehabilitation Act claims against the MTA and the State of Maryland, alleging that these Defendants failed to accommodate her disability,[6] subjected her to disparate treatment, retaliated against her for filing an EEOC Charge in May 2016, and fostered a hostile work environment. (ECF No. 2, at ¶¶ 57-67.) The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Disability discrimination claims brought under the ADA and the Rehabilitation Act are assessed under the same standards. *See Works v. Colvin*, 519 F. App'x 176, 184 (4th Cir. 2013) ("The analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the Americans with Disabilities Act.").

---

[6] Richardson does not allege that Defendants failed to accommodate her disability in violation of the ADA.

This Court will dismiss Plaintiff's Rehabilitation Act claims because the Second Amended Complaint fails to adequately allege a violation of the Act. Richardson's claims arising from the Defendants alleged failure to accommodate, disparate treatment, and hostile work environment all fail because she does not identify or describe her purported disability or allege that Defendants believed that she suffered from a disability. Additionally, Plaintiff's accommodation claim fails because she has not supported this claim with any factual allegations. Her hostile work environment claim also cannot survive Defendant's Motion, as Richardson has only vaguely alluded to incidents of harassment which would give rise to such a claim. Finally, Plaintiff has failed to state a claim for retaliation under both the Rehabilitation Act and the ADA because she has not described the contents of her May 2016 EEOC Charge or provided a copy of this Charge to this Court.

## A. Richardson fails to state accommodation, disparate treatment, and hostile work environment claims because she has not alleged that she suffers from a disability.

The MTA Defendants argue that Richardson has failed to state a claim under the Rehabilitation Act based on an alleged failure to provide a reasonable accommodation, disparate treatment, and a hostile work environment because the conclusory allegations of the Second Amended Complaint do not warrant the inference that she suffers from a disability. Richardson must sufficiently allege a disability, real or perceived, to prevail upon all three of these claims. *Rock v. McHugh*, 819 F. Supp. 2d 456, 471 (D. Md. 2011) (hostile work environment claims); *Evans v. Potter*, RDB-02-4043, 2003 WL 24085317, at *4 (D. Md. 2003) (accommodation claims); *Armstead v. Becton Dickinson Primary Care Diagnostics, Inc.*, 919 F. Supp. 188, 192 (D. Md. 1996) (disparate treatment claims). The Rehabilitation Act adopts the ADA's

definition of "disability." *Brady v. Bd. of Educ. Of Prince George's Cty.*, 222 F. Supp. 3d 459, 468 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018). The ADA defines the term "disability" as "(1) a physical or mental impairment that substantially limits one or more major life activities (the 'actual-disability' prong); (2) a record of such impairment (the 'record-of' prong); or (3) being regarded as having such an impairment (the 'regarded-as' prong)." *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). This same definition applies to Rehabilitation Act claims. *Cochran v. Holder*, 436 F. App'x 227, 231 (4th Cir. 2011). To survive a Motion to Dismiss, the plaintiff must explain how the alleged disability meets one of these criteria; merely parroting the statutory language does not suffice. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 751 (4th Cir. 2018) (determining that plaintiffs had failed to allege that nursing home residents had disabilities because the Complaint merely alleged that they were "qualified individuals with a disability.")

Plaintiff has failed to sufficiently allege that she suffers from a physical or mental impairment that substantially limits one or more of her major life activities or that she has a record of such impairment. Rather than identifying or describing her disability, the Second Amended Complaint does little more than parrot the language of the ADA. Without further elaboration, Richardson alleges that she was "suffering from a mental health condition." (ECF No. 2, at ¶ 58.) She contends that this unidentified condition "substantially limited one or more of Plaintiff's major life activities." (*Id.* at ¶ 58.) She further alleges that Defendants "knew that Plaintiff had a record and history of having a disability." (*Id.* at ¶ 59.) Richardson does not explain how her mental health condition affects her daily activities, if at all. Because her vague allegations merely replicate the language of the statute, Richardson has failed to

allege that she has a disability under either the "actual-disability" or "record-of" prong.

Richardson' Complaint also fails to support its conclusion that the MTA Defendants "regarded and perceived Plaintiff as an individual with a disability." (ECF No. 2, at ¶¶ 59, 70.) The few factual allegations of the Complaint do not support this assertion. Dr. Toney allegedly found that Richardson's physical and mental status examination was "unremarkable." (ECF No. 2, at ¶ 21.) Dr. Craig allegedly "rubber-stamped" this assessment, adding that Richardson could not perform her essential job functions because of her "integrity, stress tolerance, social competence, and impulse control." (*Id.* at ¶ 23.) These evaluations merely suggest that the MTA did not believe that Richardson could perform police work. Without additional factual context, these comments do not warrant the inference that the Defendants regarded Richardson as having a disability. *See Hooven-Lewis v. Caldera*, 249 F.3d at 267-68 ("An employer does not regard an employee as substantially limited in her ability to work simply because it finds her incapable of satisfying the demands of a particular job."). Accordingly, the Complaint fails to allege that Richardson was "regarded as" having a disability. Based on Richardson's failure to satisfy all three definitions of "disability" contained in the ADA, her disparate treatment, accommodation, and hostile work environment claims must be dismissed.

**B. Richardson has failed to state a claim under the Rehabilitation Act based on Defendant's alleged failure to accommodate her disability.**

The MTA Defendants additionally argue that Richardson's disability accommodation claims must be dismissed because Richardson's only allegations concerning this claim are wholly conclusory. (ECF No. 13-1, at 17.) Under the Rehabilitation Act, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); *see Hooven–Lewis v.*

*Caldera,* 249 F.3d 259, 268 (4th Cir. 2001) (holding that analysis of the "failure to accommodate" language of the Americans with Disabilities Act applies to Rehabilitation Act claims). To prevail on a Rehabilitation Act claim, the Plaintiff must establish: (1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) she could perform the essential functions of the position with reasonable accommodation; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC,* 257 F.3d 373, 387 n.11 (4th Cir. 2001).

Closely tracking the elements of this cause of action, Richardson alleges that "with reasonable accommodations and allowances, [she] was capable of performing all essential functions of her job" (ECF No. 2, at ¶ 60), and that the MTA "refus[ed] to make accommodations" for her disability (*Id.* at ¶ 65). The Second Amended Complaint does not support these vague assertions with any factual content whatsoever. Richardson does not allege that she requested an accommodation or explain how her unspecified mental health condition could be accommodated. Accordingly, Richardson has failed to state a claim under this theory.

## C. Richardson has failed to state a hostile work environment claim under the Rehabilitation Act.

The MTA Defendants contend that the Amended Complaint fails to state a plausible hostile environment claim under the Rehabilitation Act, arguing that Richardson's allegations of harassment are both vague and insufficiently severe or pervasive. To establish a hostile work environment claim under the Act, Plaintiff must allege that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter the

conditions of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

The fourth element is satisfied if "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . [that is] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). To determine if the alleged conduct was "sufficiently severe," courts look to the "totality of the circumstances." *Harris*, 510 U.S. at 23. Although *Harris* concerned a hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Title VII precedent guides the interpretation of the ADA (and thus the Rehabilitation Act). *Fox*, 247 F.3d at 176. The totality of the circumstances inquiry includes: (1) the "frequency of the discriminatory conduct;" (2) "its severity;" (3) "whether it is physically threatening or humiliating, or a mere offensive utterance;" and (4) "whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. This inquiry necessarily includes "both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing *Harris*, 510 U.S. at 21-22).

The Complaint must provide sufficient factual context to permit this analysis; merely identifying a few incidents of harassment and broadly alleging a hostile work environment does not suffice. In *Wilson v. Montgomery County Bd. of Trustees*, PWG-17-2784, 2018 WL 4300498 (D. Md. 2018), Plaintiff Joy Wilson ("Wilson") generally alleged that she "was isolated, ignored, harassed, and bullied at various times" by her employer. *Id.* at *3. The Complaint additionally referenced one heated exchange between Wilson and her direct

supervisor as well as a critical performance review authored by her manager. *Id.* This Court determined that these allegations did not suffice to state a claim of hostile work environment under the ADA. *Id.* at * 5. Specifically, Wilson's vague contentions that she was "ignored, harassed, and bullied" were too conclusory to satisfy the federal pleading standard. *Id.* Moreover, the Complaint's references to exchanges between Wilson and her supervisors amounted to only "a few isolated incidents" which could not give rise to a hostile work environment claim. *Id.*

The Second Amended Complaint does not permit an inference of a hostile work environment because, setting aside its conclusory allegations, it only references two isolated incidents of alleged misconduct. Richardson generally alleges a "campaign of abuse and harassment" but provides few concrete allegations to support this claim. (ECF No. 2, at ¶¶ 64, 72.) Instead, the Complaint vaguely references "meritless write-ups, hyper supervision, hyper scrutinizing, disparate treatment (including charging her for a phone she allegedly lost but not charging male counterparts for the same infraction), making false allegations regarding performance, and have otherwise harassed Plaintiff." (*Id.* at ¶ 81.) This catalogue of complaints suffers from the same defects this Court identified in *Wilson*, as Richardson has not provided any information about the identity of her alleged harassers, the content of the alleged write-ups, or the time period during which these incidents occurred. Richardson's complaint of sex-based discrimination is especially vexing, as Plaintiff's theory of recovery is based on disability discrimination. Aside from these vague and misguided allegations, the Complaint only references one encounter between Richardson and Lt. Timothy Perry occurring in August 2016, during which Perry confiscated Richardson's phone, escorted her

from an unspecified location with the aid of another employee, and told her that she was "not an officer." *Id.* at ¶ 30. With no additional factual context provided, these actions do not appear especially severe. Accordingly, Plaintiff has failed to state a hostile work environment claim.

**D. Richardson has failed to state a claim of retaliation under both the ADA and the Rehabilitation Act.**

As previously explained, this Court has jurisdiction over Richardson's retaliation claims under both the Rehabilitation Act and the ADA.[7] The Rehabilitation Act incorporates the American with Disability Act's anti-retaliation provision, which prohibits "discrimination against any individual because she has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a). Unlike Richardson's other pending claims, a retaliation claim under the ADA or the Rehabilitation Act does not require the plaintiff to allege that she has a disability. To state a claim of retaliation, Richardson must allege that: (1) she engaged in a protected activity; (2) Defendants took an adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. *See Haulbrook v. Michelin N. Am.,* 252 F.3d 696, 706 (4th Cir. 2001). At this stage, the employee may satisfy the first element by alleging that she opposed a practice prohibited by the ADA or the Rehabilitation Act. *See Haulbrook v. Michelin North* America, 252 F.3d 696, 706 n.3 (4th Cir. 2001) (holding that employee's demand to speak with a lawyer could not provide a basis for

---

[7] The MTA Defendants contend that this Court lacks jurisdiction over Richardson's ADA claims based on the doctrine of sovereign immunity. *See, e.g., Mattison v. Maryland Transit Admin., et al.,* RDB-15-1627, 2016 WL 2898020, at *5 (D. Md. May 18, 2016) (dismissing Plaintiff's ADA claims against the MTA to the extent that plaintiff sought monetary relief). Jurisdiction is proper, however, to the limited extent that Richardson seeks injunctive relief. *See, e.g., Id.* (permitting ADA claim against the MTA to proceed based on plaintiff's claim for injunctive relief).

an ADA retaliation claim because this activity was not protected by the ADA). When, as here, a plaintiff pursues a retaliation claim based on filing a Charge of Discrimination, the Complaint must allege that the Charge complained of unlawful activity prohibited by the applicable statute. *Mobley v. Advance Stores Co., Inc.*, 842 F. Supp. 2d 886, 891 (E.D. Va. 2012) (dismissing Title VII retaliation claim based on filing an EEOC Charge because the Charge dealt solely with his alleged disability and therefore did not constitute protected activity under Title VII).

In this case, Richardson alleges that the MTA retaliated against her for filing a complaint with the EEOC on May 26, 2016. *See* ECF No. 2, at ¶ 13 ("[A]fter she filed an EEOC complaint in May 2016, she was accused of not being fit to serve as a police officer."); *Id.* at ¶¶ 64, 72 ("The . . . abuse and harassment . . . has been ongoing to this day since May 2016 immediately after she filed an EEOC discrimination and retaliation charge."); ECF No. 20-1, at 1 ("This action results from a troubling response to Plaintiff filing an EEOC complaint in May 2016."). The Second Amended Complaint only claims that the EEOC Charge was "for retaliation" and that she "decided not to pursue" it. (*Id.* at ¶¶ 13-14.) Aside from these vague remarks, Richardson does not provide any information about the Charge's contents and neither party has provided this Court with a copy of the Charge. By failing to allege that she had opposed conduct prohibited by the ADA or the Rehabilitation Act, Richardson has failed to state a claim for retaliation under those statutes.

The Complaint additionally references a second EEOC Charge, filed on July 25, 2016, which Plaintiff describes as a "discrimination claim based on Disability and Retaliation." (*Id.* at ¶ 19.) The Complaint provides no additional details, and the parties have not submitted this Charge for this Court's review. Richardson does not appear to be pursuing a retaliation

claim based on this Charge, as she repeatedly alleges that the MTA began to retaliate against her immediately after she filed the May 2016 Charge and does not cite the July 2016 charge as an alternative basis for retaliation. (*Id.* at ¶¶ 13, 64, 72.) Accordingly, Richardson has not presented a claim for Retaliation based on the July 2016 Charge.

### III. This case is Remanded to the Circuit Court for Baltimore City, Maryland.

For the reasons stated above, Plaintiff's two federal claims are dismissed. Remaining are Richardson's defamations claims (Counts I, II, and III); a breach of contract claim (Count IV); as well as discrimination, disparate treatment, and retaliation claims brought pursuant to the Maryland Fair Employment Practices Act. (Count VII). In general, this Court may exercise jurisdiction over state law "claims that are so related to claims in [an] action within [their] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. Having disposed of the federal claims which formed the basis of this Court's subject matter jurisdiction, this Court declines to exercise supplemental jurisdiction over the pending state law claims. *See* 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[A] court has discretion to dismiss or keep a case when it has dismissed all claims over which it has original jurisdiction.").

When a district court declines to exercise supplemental jurisdiction over state law claims originally brought in state court, it has the discretion to remand the case back to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614 (1988) ("A district court has discretion to remand to state court a removed case involving pendent claims upon a proper

determination retaining jurisdiction over the case would be inappropriate.") This case was originally filed in state court and it is therefore within this Court's discretion to remand Plaintiff's state law claims back to the Circuit Court for Baltimore City. *See Safar v. Tingle*, 859 F.3d 241, 257 (4th Cir. 2017) ("[W]e have recognized that in declining supplemental jurisdiction ... 'a court may dismiss the claim or, if it was removed, remand it to State court.'" (quoting *Hinson v. Norwest Fin. South Carolina*, 239 F.3d 611, 616 (4th Cir. 2001))); *Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014) ("'[A] federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims have been eliminated.'" (quoting *Carnegie-Mellon*, 484 U.S. at 345)). Accordingly, the remaining state law claims set forth in Counts I, II, III, IV, and VII are REMANDED to the Circuit Court for Baltimore City.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend the Complaint (ECF No. 34) is DENIED. Plaintiff's Motion to Stay Proceedings Pending Completion of the EEOC Investigation and Conciliation, and Request for Hearing (ECF No. 21) is DENIED and the MTA Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART and DENIED IN PART. This Court dismisses Plaintiff's federal claims and declines to exercise supplemental jurisdiction over her state law claims. This Court declines to rule on the Greenside Defendant's pending Motion to Dismiss, as it concerns only state law claims. (ECF No. 8.) Plaintiff's state law claims are REMANDED to the Circuit Court for Baltimore City.

A separate Order follows.

Dated: March 1, 2019

_____/s/_____
Richard D. Bennett
United States District Judge